UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------ x
In re VEECO INSTRUMENTS INC.    :    Case No.: 7:05-md-01695 (CM)(GAY)
SECURITIES LITIGATION         :
------------------------------------------------------ x
------------------------------------------------------ x
THIS DOCUMENT RELATES TO    :
ALL ACTIONS               :
------------------------------------------------------ x


## LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES, AND REIMBURSEMENT OF REASONABLE COSTS AND EXPENSES TO LEAD PLAINTIFF FOR REPRESENTATION OF THE CLASS

**BERGER & MONTAGUE, P.C.**
Sherrie R. Savett
Carole A. Broderick
Arthur Stock
Phyllis M. Parker
Jeffrey L. Osterwise
1622 Locust Street
Philadelphia, PA 19103
(215) 875-3000

*Lead Counsel for Lead Plaintiff Steelworkers Pension Trust and the Class*

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................... 1

II.     SUMMARY OF THE ARGUMENT ......................................... 1

III.    THE REQUESTED FEE IS FAIR AND REASONABLE ........................ 4

        A.    A Reasonable Percentage of the Fund Recovered Comports with the Legal
              Standards Governing Awards of Attorney's Fees in this Circuit .............. 4

        B.    The Requested Fee is Fair and Reasonable as a Percentage of the Settlement
              Benefit Obtained for the Class ........................................ 7

        C.    The Percentage Fee Requested by Plaintiffs is Reasonable Under the Second
              Circuit's *Goldberger* Factors ........................................ 8

              1.    The Significant Time and Labor Expended by Plaintiffs' Counsel ...... 9

              2.    The Complexity, Magnitude and Risks of Litigation, and the Contingent
                    Nature of the Fee Supports the Requested Fee .................... 11

              3.    The Quality of Plaintiffs' Counsel's Representation and Substantial
                    Benefit to the Class Supports the Requested Fee ................... 14

              4.    The Requested Fee Award is Reasonable in Relation to the Settlement
                    Amount ...................................................... 14

              5.    Public Policy Considerations Fully Support the Requested Fee ....... 15

        D.    A "Cross-Check" Of Plaintiffs' Counsel's Lodestar Demonstrates the
              Reasonableness of the Requested Percentage Fee ........................ 16

              1.    The Number of Hours Expended By Plaintiffs' Counsel Was
                    Reasonable .................................................. 16

              2.    The Rates Charged By Plaintiffs' Counsel Are Reasonable .......... 17

        E.    The Requested Fee Is Reasonable Because It Implies a Fractional Multiplier,
              Indicating that Plaintiffs Will Not Be Compensated For Much Of Their
              Time Spent Litigating This Case ..................................... 19

F.    The Reaction of the Class Demonstrates The Reasonableness of the Fee Requested . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

IV.    LEAD COUNSEL'S REQUEST FOR REIMBURSEMENT OF EXPENSES IS REASONABLE AND APPROPRIATE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

V.    AN AWARD OF REASONABLE COSTS AND EXPENSES FOR THE STEELWORKERS IS APPROPRIATE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

IV.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

## <u>TABLE OF AUTHORITIES</u>

*Anixter v. Home-Stake Prod. Co.*
    77 F.3d 1215 (10th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*AUSA Life Ins. Co. v. Ernst & Young,*
    2002 U.S. App. LEXIS 13845 (2d Cir. July 8,  2002) . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Backman v. Polaroid Corp.,*
    910 F.2d 10 (1st Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Bateman Eichler, Hill Richards, Inc. v. Berner,*
    472 U.S. 299 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 15

*Behrens v. Wometco Enterprises. Inc.,*
    118 F.R.D. 534 (S.D. Fla. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Blum v. Stenson,*
    465 U.S. 886 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 18

*Boeing Co. v. Van Gemert,*
    444 U.S. 472 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6

*Bentley v. Legent Corp.,*
    849 F. Supp. 429 (E.D. Va. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Culp v. Gainsco, Inc.,*
    No 04-723 (N.D. Tex. Feb. 13, 2007)) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Davidco Investors, LLC v. Anchor Glass Container Corp.,*
    No. 04-2561 (M.D. Fla. Mar. 16, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Denney v. Jenkens & Gilchrist,*
    230 F.R.D. 317 (S.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Detroit v. Grinnell Corp.,*
    495 F.2d 448 (2d Cir. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Dura Pharm., Inc. v. Broudo,*
    544 U.S. 336 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Dusek v. Mattel, Inc.,*
    CV-99-10864-MRP (C.D. Ca., Sept. 29, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Eisenstadt v. Centel Corp.*,
    113 F.3d 738 (7th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Goldberger v. Integrated Resources, Inc.*,
    209 F.3d 43 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Hicks v. Morgan Stanley*,
    2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 23, 24

*In re Amerco Sec. Litig.*,
    No. 04-2182 (D. Ariz. Nov. 2, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re American Bank Note Holographics*,
    127 F. Supp. 2d 418 (S.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6, 20

*In re Bankamerica Corp. Sec. Litig.*,
    228 F. Supp. 2d 1061 (E.D. Mo. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*In re Biogen Sec. Litig.*,
    No. 94-12177 PBS (D. Mass. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*In re Bisys Sec. Litig.*,
    2007 U.S. Dist. LEXIS 51087 (S.D.N.Y. July 16, 2007) . . . . . . . . . . . . . . . . . . . . . 7

*In re Boston Chicken Sec. Litig.*,
    C.A. No. 97-WM-1308 (D. Col., Aug.10, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*In re Campbell Soup Co. Sec. Litig.*,
    C.A. No. 00-152 (JEI) (D.N.J., May 22, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*In re Carreker Corp. Sec. Litig.*,
    No. 03-250 (N.D. Tex. Aug. 16, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*In re Dobson Communications, Inc. Sec. Litig.*,
    No. 04-1394 (W.D. Okla. Mar. 20, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re EVCI Career Colleges Holding Corp. Sec. Litig.,*
    2007 U.S. Dist. LEXIS 57918 (S.D.N.Y. July 27, 2007) . . . . . . . . . . . . . . . . . . . . passim

*In re Greenwhich Pharm. Sec. Litig.,*
    1995 WL 251293 (E.D.Pa. Aug. 26, 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*In re Health Mgmt., Inc. Sec. Litig.,*
    No. 96-CV-889 (ADS) (E.D.N.Y. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*In re Immune Response Secs. Litig.,*
    497 F. Supp. 2d 1166 (S.D. Cal. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*In re Indep. Energy Holdings PLC Sec. Litig.,*
    2003 U.S. Dist. LEXIS 17090 (S.D.N.Y. Sept. 26, 2003) . . . . . . . . . . . . . . . . . . . . . 18

*In re Media Vision Technology Sec. Litig.,*
    913 F. Supp. 1362 (N.D.Cal.1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*In re NASDAQ Market-Makers Antitrust Litig.,*
    187 F.R.D. 465 (S.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*In re Prudential Sec. Ltd. Pshps. Litig.,*
    985 F. Supp. 410 (S.D.N.Y. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 19

*In re Sumitomo Copper Litig.,*
    74 F. Supp. 2d 393 (S.D.N.Y. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*In re Warner Communications Sec. Litigation,*
    618 F. Supp. 735 (S.D.N.Y. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*In re Warnaco Group, Inc. Sec. Litig.,*
    2004 WL 1574690 (S.D.N.Y. July 13, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*In re Worldcom, Inc. ERISA Litig.,*
    2004 WL 2338151 (S.D.N.Y. Oct. 18, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*J. I. Case Co. v. Borak,*
    377 U.S. 426 (1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Landy v. Amsterdam,*
    815 F.2d 925 (3d Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*LeBlanc-Sternberg v. Fletcher,*
    143 F.3d 748 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Lemmer v. Golden Books Family Entm't Inc.,*
    98 Civ. 5748 (S.D.N.Y. Oct. 12, 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Luciano v. Olsten Corp.,*
    109 F.3d 111 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Maley v. Del Global Technologies Corp.,*
    186 F. Supp. 2d 358 (S.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

*Marrari v. Medical Staffing Network Holdings, Inc.,*
    No. 04-80158 (S.D. Fla. March 6, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Maywalt v. Parker & Parsley Petroleum Co.,*
    963 F. Supp. 310 (S.D.N.Y. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Meridian Investment Club v. Delta Financial Corp.,*
    Master File No. CV-99-7033 (S.D.N.Y. April 14, 2003) . . . . . . . . . . . . . . . . . . . . . . . . 8

*Miltland Raleigh-Durham v. Myers,*
    840 F. Supp. 235 (S.D.N.Y. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Missouri v. Jenkins,*
    491 U.S. 274 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Newman v. Caribiner Int'l Inc.,*
    No. 99 14 Civ. 2271 (S.D.N.Y. Oct. 19, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Robbins v. Koger Prop.,*
    116 F.3d 1441 (11th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Savoie v. Merchants Bank,*
    84 F.3d 52 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Strougo v. Bassini,*
    258 F. Supp. 2d 254 (S.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Sutton v. Bernard,*
    - - F. 3d - -, 2007 WL 2963940 (7th Cir. Oct. 12, 2007) . . . . . . . . . . . . . . . . . . . . . . . 18

*Taft v. Ackermans,*
    2007 U.S. Dist. LEXIS 9144 (S.D.N.Y. Jan. 31, 2007) . . . . . . . . . . . . . . . . . . . . . . . passim

*Teachers' Ret. Sys. v. A.C.L.N., Ltd.,*
    2004 U.S. Dist. LEXIS 8608 (S.D.N.Y. May 14, 2004) . . . . . . . . . . . . . . . . . . . . . . 17, 20

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
    2007 WL 1773208 (June 21, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*The Takara Trust v. Molex, Inc.,*
    No. 05-1245 (N.D. Ill. Mar. 1, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Uniroyal Goodrich Tire Company v. Mutual Trading Corp.,*
    63 F.3d 516 (7th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,*
    396 F.3d 96 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 9, 15

*Winkler v. NRD Mining, Ltd.,*
    198 F.R.D. 355 (E.D.N.Y. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## FEDERAL STATUTES AND RULES

15 U.S.C. § 78u-(a)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

15 U.S.C. §78u-4(a)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Fed. R. Civ. P. 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

## I.    INTRODUCTION

Plaintiffs' Lead Counsel, Berger & Montague, P.C. respectfully petitions the Court for (i) an award of attorneys' fees of 30% of the $5,500,000 settlement fund, or $1,650,000; (ii) reimbursement of $774,329.29 in expenses that Plaintiffs' counsel incurred in successfully prosecuting the claims in this action (the "Action"); and (iii) reimbursement of $16,089 in costs and expenses incurred by the Lead Plaintiff Steelworkers Pension Trust ("Steelworkers" or "Lead Plaintiff") directly relating to its representation of the Class.[1]

## II.    SUMMARY OF THE ARGUMENT

Concluding almost two years of extremely hard-fought litigation, Steelworkers and Plaintiffs' Lead Counsel have obtained a settlement of $5,500,000 in cash, plus interest, for the Class (the "Settlement"). The Settlement was achieved only after extensive motion practice and fact and expert discovery, and after the parties participated in two mediation sessions before a highly respected mediator, the Honorable Nicholas H. Politan. Moreover, the Settlement was reached only after extensive and near-complete pre-trial preparations, including submission of trial exhibits and a full-day pre-trial hearing before this Court on June 28, 2007. The parties executed an agreement in principle to settle the litigation on July 5, 2007, only days before trial was scheduled to begin on July 9, 2007. *See* accompanying Declaration of Carole A. Broderick in Support of the Motion for Final Approval of the Settlement, Lead Counsel's Request for Attorneys' Fees and Reimbursement of Expenses and Award to Lead Plaintiff for Costs and Expenses (the "Broderick Decl.").

---

[1] Accompanying this memorandum (the "Fee Petition") is Lead Plaintiff's Memorandum of Law in Support of Its Motion for Final Approval of the Settlement and Plan of Allocation (the "Settlement Memorandum") and the other papers set forth at p.1 n. 1 of the Settlement Memorandum.

This Settlement is particularly notable because Plaintiffs faced formidable risks with respect to proving scienter and damages. First, there were no allegations of insider trading and no finding of wrongdoing by the SEC or other governmental agency. Further, Plaintiffs were severely constrained from establishing the originally-contemplated damages in the case due to the Court's ruling on one of Defendants' motion *in limine* which found that some class members had suffered no damages.

In light of the risks posed by continued litigation, the $5.5 million Settlement is an excellent result. Moreover, published data on securities fraud settlement further confirms the quality of the proposed Settlement. The $5.5 million settlement results in an estimated average recovery of $.87 per share of Veeco common stock for the approximately 6.3 million shares which suffered damages in accordance with the Court's June 28, 2007 opinion, or 23.2% of the estimated maximum $3.75 per share suffered by any Class Member. The 23.2% possible recovery of estimated damages exceeds the median percentage reported by Cornerstone Research for settlements overall, which was 3.6% through year-end 2005 and 2.4% for 2006.[2]

As compensation for the efforts expended to achieve the settlement for the Class, Lead Counsel Berger & Montague is applying for counsel fees of $1,650,000, constituting 30% of the Settlement Fund, and for reimbursement of Plaintiffs' counsel's out-of-pocket expenses in the amount of $774,329.29. The 30% fee requested is well within the range of fees customarily sought by (and awarded to) experienced counsel in similar securities class actions, and the fairness of the percentage fee is underscored by a lodestar crosscheck, which reveals that counsel will not be

---

[2] *See* Laura E. Simmons & Ellen M. Ryan, *Cornerstone Research, Securities Class Action Settlements: 2006 Review and Analysis* (Cornerstone Research 2007) at p. 6, http://www.cornerstone.com (the "Cornerstone Report").

compensated for a substantial portion of the time they devoted to litigating the Action on behalf of the certified Class. The lodestar crosscheck shows that the fee requested in fact represents a fractional multiplier - only about 35.91% - of the aggregate lodestar of $4,594,233.40 accumulated by Plaintiffs' counsel.[3]

As described below, Plaintiffs' Counsel litigated the case to the eve of trial on a wholly contingent basis, incurring $774,329.29 in out-of-pocket expenses and spent over 12,000 hours incurring over $4.5 million in lodestar. Berger & Montague alone bore all the risks and out-of-pocket expenses for almost two years during this hard-fought litigation against an aggressive opponent. The Steelworkers, a sophisticated institutional investor, which was actively engaged in the prosecution of this Action, approved the Settlement and fee percentage sought by Plaintiffs' Counsel. *See* Declaration of Richard S. Hoffmann, Esquire, General Counsel of Lead Plaintiff Steelworkers Pension Trust in Support of an Award to Steelworkers for Reimbursement of Reasonable Costs and Expenses Incurred in Representation of the Class and in Support of Final Approval of the Settlement and of Lead Counsel's Application for Attorneys' Fees ("Hoffmann Decl.") at ¶4.

Significantly, not a single Class Member has objected to the fee and expenses requested. A total of 15,528 notices of the settlement were mailed to Class Members advising them of Plaintiffs' Counsel's intent to apply to the Court for an award of attorneys' fees of 30% of the Settlement Fund,

---

[3] In addition, Lead Counsel will reimburse from its fee award the law firm Milberg Weiss LLP for the time it expended in serving as liaison counsel from April 2005 until the time the Court appointed Berger & Montague as sole Lead Counsel in its Order of October 12, 2005, in which the Court ruled that no liaison counsel would be needed since this was an ECF case. Lead Counsel has also included the out-of-pocket expenses incurred by Milberg Weiss as liaison counsel during that period in Lead Counsel's fee and expense petition. *See* accompanying Broderick Aff.

3

reimbursement of their out-of-pocket expenses not to exceed $775,000, and reimbursement to the

Steelworkers of their costs and expenses for representing the Class of $16,089. *See* Affidavit of

Edward J. Sincavage, C.P.A., of Heffler Radetich & Saitta L.L.P., the Claims Administrator

Regarding Dissemination of Notice to the Class ("Sincavage Aff.") at ¶¶10-12. Information

regarding the settlement, including downloadable copies of the Notice and Claim Form, was made

available through the Claim Administrator's website, *www.hrsclaimsadministration.com*. *Id.* at ¶13.

The lack of any objections further supports the fairness and reasonableness of the fee and expense

reimbursement requests.[4]

## III.    THE REQUESTED FEE IS FAIR AND REASONABLE

### A.    A Reasonable Percentage of the Fund Recovered Comports with the Legal Standards Governing Awards of Attorneys' Fees in this Circuit

Pursuant to the "'equitable' or 'common fund' doctrine established more than a century ago

in *Trustees v. Greenough*, 105 U.S. 527, 532-533, 26 L. Ed. 1157 (1881), attorneys who create a

common fund to be shared by a class are entitled to an award of fees and expenses from that fund

as compensation for their work." *In re American Bank Note Holographics*, 127 F. Supp. 2d 418, 430

(S.D.N.Y. 2001)(McMahon, J.); *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, 2007 U.S.

Dist. LEXIS 57918, *43 (S.D.N.Y. July 27, 2007) (McMahon, J.) ("The Supreme Court has

recognized that 'a lawyer who recovers a common fund for the benefit of persons other than . . . his

client is entitled to a reasonable attorney's fee from the fund as a whole.'") (citing *Boeing Co. v. Van

Gemert*, 444 U.S. 472, 478 (1980)); *Savoie v. Merchants Bank*, 84 F.3d 52, 56 (2d Cir. 1996). Fees

and expenses are paid from the common fund so that all class members contribute equally towards

---

[4] Moreover, there has been only one request for exclusion.

4

the costs associated with litigation pursued on their behalf. *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 47 (2d Cir. 2000) (the common fund doctrine "prevents unjust enrichment of those benefitting from a lawsuit without contributing to its cost").

Courts have recognized that, in addition to providing just compensation, awards of attorneys' fees from a common fund serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future misconduct of a similar nature. *See Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002)(McMahon, J.). The Supreme Court has emphasized that private securities actions, such as the instant action, provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'" *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (citation omitted); *accord Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S.Ct. 2499, 2007 WL 1773208, at *4 (June 21, 2007).

In *Goldberger*, the Second Circuit emphasized the need for fee awards to plaintiffs' counsel to be fair and reasonable, and described two acceptable fee calculation methodologies. One is the "lodestar" method, where "the district court scrutinizes the fee petition to ascertain the number of hours reasonably billed to the class and then multiplies that figure by an appropriate hourly rate." *Goldberger*, 209 F.3d at 47. Once the lodestar is calculated, the court "may, in its discretion, increase the lodestar by applying a multiplier based on 'other less objective factors,' such as the risk of the litigation and the performance of the attorneys." *Id.* The second method for calculating fees is the "percentage of recovery" method. *Id.* "In determining what percentage to award, courts have looked to the same 'less objective' factors that are used to determine the multiplier for the lodestar." *Id.* Because the percentage of recovery approach does not require courts to "exhaustively

5

scrutinize[]" attorneys' time records, that methodology is "simpler" than the lodestar approach. *Id.* at 47, 50.

Indeed, the Supreme Court has consistently held that where a common fund has been created for the benefit of a class as a result of counsel's efforts, the award of counsel's fees should be determined by the percentage method. *See, e.g., Boeing*, 444 U.S. at 478-479; *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984). The advantages of the percentage of recovery methodology led the Second Circuit *Goldberger* court to reaffirm this Circuit's view that it is an accepted means for calculating attorneys' fees in class actions. *Id.* Recently, the Second Circuit has approved the percentage of recovery method of awarding fees in common fund cases. *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 121 (2d Cir. 2005). The *Wal-Mart* Court observed that "[t]he trend in [the Second] Circuit is toward the percentage method." *Id.* at 122.

Moreover, from a public policy perspective, this Court has noted that "[t]he percentage method is attractive because it directly aligns the interests of the Class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation, which clearly benefits both litigants and the judicial system." *American Bank Note*, 127 F. Supp. 2d at 431-32. The percentage approach "is uniquely the formula that mimics the compensation system actually used by individual clients to compensate their attorneys" and often serves as a favorable substitute for more costly judicial monitoring of the attorney's performance and "can serve as a proxy for the market in setting counsel fees." *Id.* at 432; (citing *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 397 (S.D.N.Y. 1999)).

This Court in a recent decision confirmed that the percentage method continues to be the trend of district courts in this Circuit and that it "has been expressly adopted in the vast majority of

circuits." *EVCI*, 2007 U.S. Dist. LEXIS 57918, at **44-46 & *46 n. 3 (collecting cases). This Court

observed:

> For many years, courts within this Circuit recognized that "Support for the
> lodestar/multiplier approach in common fund cases had eroded, and there has been
> a 'groundswell of support for *mandating* a percentage-of-the-fund approach' in the
> common fund cases."

*EVCI*, 2007 U.S. Dist. LEXIS 57918, at **46-47 n. 3. (citing *In re Sumitomo Copper Litig.*, 74 F.

Supp. 2d at 397 (citation omitted, emphasis in original). *See also Taft v. Ackermans*, 2007 U.S.

Dist. LEXIS 9144, at *28 (S.D.N.Y. Jan. 31, 2007). This view is in accord with the dictates of the

Private Securities Litigation Reform Act ("PSLRA"), which provides that a fee award should

constitute "a reasonable percentage of the amount of any damages and prejudgment interest actually

paid to the class." 15 U.S.C. § 78u-4(a)(6)(emphasis added). *See EVCI*, 2007 U.S. Dist. LEXIS

57918, at*46.

Accordingly, Plaintiffs' Counsel respectfully submit that the percentage of recovery approach

is the appropriate methodology for awarding attorneys' fees in this action. Furthermore, as discussed

further below, a "cross-check" with a lodestar analysis also supports the percentage fee request.

**B.    The Requested Fee is Fair and Reasonable as a Percentage of the Settlement
        Benefit Obtained for the Class**

The requested amount of attorneys' fees, $1.65 million, representing 30% of the total all-cash

recovery to the Class, is fully consistent with fees awarded in other securities class action settlements

in this Circuit.[5]    In this case, 30% of the $5.5 million settlement results in a $1.65 million fee.

---

[5] *See, e.g., Taft v. Ackermans*, 2007 U.S. Dist. LEXIS 9144, at *32 (S.D.N.Y. Jan. 31, 2007)
(awarding 30% of $15.17 million settlement); *Hicks v. Morgan Stanley*, 2005 WL 2757792, at *9
(S.D.N.Y. Oct. 24, 2005)(30% of $10 million settlement); *In re Warnaco Group, Inc. Sec. Litig.*,
2004 WL 1574690, at *3 (S.D.N.Y. July 13, 2004) (30% of $12.85 million settlement); *In re Bisys
Sec. Litig.*, 2007 U.S. Dist. LEXIS 51087, at * 8 (S.D.N.Y. July 11, 2007) (30% of $65.87 million

"Thirty percent of a larger settlement fund could constitute a windfall; however, a settlement fund of this size does not create such an issue." *Taft*, 2007 U.S. Dist. LEXIS 9144, at *32; *Hicks*, 2005 WL 2757792, at *9 ("A settlement amount of $10 million does not raise the windfall issue in the same way as would a $100 million settlement, and a 30% fee does not produce such a windfall."). A fee of thirty percent of the settlement fund is consistent with fees awarded in similar class action settlements of comparable value. [6]

### C.    The Percentage Fee Requested by Plaintiffs is Reasonable Under the Second Circuit's *Goldberger* Factors

Regardless of which method is used, the Second Circuit has set forth the following six factors that should be considered by District Courts in determining the reasonableness of the fee:

> (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

---

settlement).   All unreported decisions referred to herein are available at the Court's request.

[6] *See, e.g., The Takara Trust v. Molex, Inc.*, No. 05-1245 (N.D. Ill. Mar. 1, 2007)(30% of $10.5 million settlement); *In re Amerco Sec. Litig.*, No. 04-2182 (D. Ariz. Nov. 2, 2006)(30% of $7 million settlement); *Davidco Investors, LLC v. Anchor Glass Container Corp.*, No. 04-2561 (M.D. Fla. Mar. 16, 2007)(30% of $5.5 million settlement); *In re Carreker Corp. Sec. Litig.*, No. 03-250 (N.D. Tex. Aug. 16, 2006)(30% of $5.25 million settlement); *Marrari v. Medical Staffing Network Holdings, Inc.*, No. 04-80158 (S.D. Fla. March 6, 2007)(30% of $5 million settlement); *Culp v. Gainsco, Inc.*, No 04-723 (N.D. Tex. Feb. 13, 2007)(30% of $4 million settlement); *In re Dobson Communications, Inc. Sec. Litig.*, No. 04-1394 (W.D. Okla. Mar. 20, 2007)(30% of $3.4 million settlement).  Indeed, there are numerous other common fund cases in this District alone where fees were awarded in the amount of 33 1/3 % of the settlement fund, an amount greater than that requested here. *See, e.g., Strougo v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003) (33 1/3% of settlement fund); *Maley*, 186 F. Supp. 2d at 370; *Newman v. Caribiner Int'l Inc.*, No. 99 14 Civ. 2271 (S.D.N.Y. Oct. 19, 2001); *In re Net Ease.com, Inc. Sec. Litig.*, C.A. 01-CV-9405 (S.D.N.Y. May 30, 2003); *Meridian Inv. Club v. Delta Financial Corp.*, Master File No. CV-99-7033 (S.D.N.Y. April 14, 2003); *Lemmer v. Golden Books Family Entm't Inc.*, 98 Civ. 5748 (S.D.N.Y. Oct. 12, 1999) (same); *Maywalt v. Parker & Parsley Petroleum Co.*, 963 F. Supp. 310, 313 (S.D.N.Y. 1997).

8

*Goldberger*, 209 F.3d at 50; *Wal-Mart*, 396 F.3d at 122 ("[i]rrespective of which method is used, the *Goldberger* factors ultimately determine the reasonableness of a common fund fee"). The lodestar value then acts as a "cross check" and the hours submitted by the attorneys are reviewed but not exhaustively scrutinized. *Goldberger*, 209 F.3d at 50.

Consideration of the relevant *Golberger* factors clearly supports an award of a fee of 30% of the settlement fund to Lead Plaintiffs' Counsel in this case.

### 1.    The Significant Time and Labor Expended by Plaintiffs' Counsel

The first factor set forth in *Goldberger* for determining an appropriate fee is "the time and labor expended by counsel." 209 F.3d at 50. Plaintiffs' Counsel has devoted over 12,000 hours to the prosecution and settlement of this Action, including the following matters:

- extensive pre-filing investigatory work, including research, review and analysis of public filings, articles and analyst reports about Veeco.

- moving for certification of the Class under Fed. R. Civ. P. 23 at the same time they opposed Defendants' dismissal motion. In connection with the motion for class certification, Lead Plaintiff produced documents in response to Defendants' requests, and defended the depositions of the proposed Class Representative, Lead Plaintiff Steelworkers, and its asset manager.

- review of about 225,000 pages of documents produced by Defendants, including documents produced as a result of Lead Plaintiff's motion to compel Defendants' production of documents on backup tapes. Lead Plaintiff also subpoenaed documents from 26 third-parties, including Veeco's auditor Ernst & Young, and received and reviewed approximately ten thousand pages of documents from Ernst & Young alone.

- conducting ten days of depositions, including the depositions of Individual Defendants Braun, Rein and Kiernan, three Ernst & Young partners involved in Veeco's audit, former TurboDisc controller Bruce Huff, to whom the Company attributed the improprieties leading to the restatement, and Veeco's internal auditors during the Class Period, Gary Reifert and Herman Birnbaum. Lead Plaintiff also served interrogatories and requests for admission upon Defendants.

9

- during expert discovery, exchanging reports of accounting and damages experts, deposing Defendants' damages expert, and defending depositions of Plaintiffs' accounting and damages experts.

- engaging in extensive motion practice, including a number of hard-fought discovery motions involving briefing and court appearances, for example: (i) Lead Plaintiffs' motion to compel Defendants to produce documents concerning the internal investigation of TurboDisc by Veeco and Jefferson Wells; and (ii) Lead Plaintiffs' motion to obtain documents on Defendants' backup tapes.

- completing substantial preparation for trial, including submission of pre-trial order and exhibits, and filing and response to motions *in limine*. The parties attended a pre-trial conference on June 28, 2007 and were prepared to select a jury on July 9, 2007.

In total, Plaintiffs' Counsel law firm reported spending over 12,000 hours litigating this case up until trial, representing a lodestar (hours times hourly rates) of about $4.6 million. Plaintiffs' Counsel have also incurred $774,329.29 in out-of-pocket expenses on this matter since its initiation. *See* Affidavit of Carole A. Broderick in Support of Petition for Attorneys' Fees and Reimbursement of Expenses Filed on Behalf of Berger & Montague, P.C. ("Broderick Aff."). Plaintiffs' Counsels' efforts were undertaken on a totally contingent fee basis despite the possibility that Plaintiffs would not prevail in this litigation, and that Plaintiffs' Counsel would therefore receive nothing for their efforts. Yet, each of these tasks was necessary in order to achieve the result currently presented to the Court as the proposed Settlement. The time and labor expended by counsel in producing this Settlement thus supports the requested fee. Indeed, as discussed below, Plaintiffs' fee request represents a fractional multiplier of .3591 in this case. As a result, Lead Counsel will receive no compensation for almost two-thirds of their time.

10

2.      **The Complexity, Magnitude and Risks of Litigation, and the Contingent Nature of the Fee Supports the Requested Fee**

The discussion of the "magnitude and complexities of the litigation" and the "risk of the litigation," *Goldberger*, 209 F.3d at 50, in this case, is set forth in the Declaration. A securities case by its very nature is a "complex animal." *Maley*, 186 F. Supp. 2d at 372. This case was particularly hard-fought, and moreover, Berger & Montague, P.C. prosecuted this Action *by itself* against a well-staffed team of aggressive defense lawyers from the well-known law firm Gibson Dunn & Crutcher, LLP, for almost two years, up until the eve of trial. Furthermore, Plaintiffs' Counsel did not "piggy back" on any prior governmental action related to Veeco. *Maley*, 186 F. Supp. 2d at 371. Prosecution of this Action was heavily dependent on expert testimony, thereby adding substantially to its costs. Plaintiffs have encountered, and would certainly continue to encounter at trial, absent the Settlement, significant litigation risks, including successfully proving all of the necessary elements to establish that Defendants' dissemination of materially false and misleading statements regarding Veeco violated Rule 10b-5 and proving that any or all of the price drop of the stock was attributable to the disclosure of the alleged fraud as opposed to market factors. Most importantly, Plaintiffs ability to prove substantial damages was sharply reduced is a result of the Court's June 28, 2007 ruling on Defendants' motion *in limine*, finding that some class members had suffered no damages.

The particular complex and difficult issues in this case included the following:

- the difficulty of proving Plaintiffs' case through the testimony of Veeco's employees and former employees, who could be considered hostile witnesses.

- the difficult task of establishing loss causation in light of the Supreme Court's decision in *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336 (2005).

11

- the complexity of the legal and factual accounting issues involved, including GAAP and the relative novelty of the internal control issues involving the Sarbanes-Oxley Act that had to be presented to substantiate Plaintiffs' allegations of fraud and scienter.

- the difficulty of proving that Defendants' public statements were materially false and misleading.

- the difficulty in proving that any or all of the Defendants acted with scienter where there was no insider selling and no governmental or other investigating body finding of wrongdoing.

The Courts of this Circuit, including this District, have expressly recognized that the contingent nature of counsel's fee, with the built-in risk of litigation, is a highly relevant factor in determining the fee to be awarded. As the *Grinnell* court stated:

> No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended . . .

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470-471 (2d Cir. 1974); *In re Warner Communications Sec. Litig.*, 618 F. Supp. 735, 747 (S.D.N.Y. 1985) ("Numerous cases have recognized that the attorneys' contingent fee risk is an important factor in determining the fee award.") (citations omitted).

Indeed, the risk of non-payment in complex cases, such as this one, is very real. There are numerous class actions in which counsel expended thousands of hours and yet received no remuneration whatsoever despite their diligence and expertise. There was no guarantee of success at trial, and even a victory at trial does not guarantee ultimate success. *See, e.g., Robbins v. Koger Props.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal on loss causation grounds and judgment entered for defendant);

12

*Eisenstadt v. Centel Corp.*, 113 F.3d 738 (7th Cir. 1997)(Seventh Circuit affirmed the lower court's granting of summary judgment in favor of defendants); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (Tenth Circuit overturned securities fraud class action jury verdict for plaintiffs in case filed in 1973 and tried in 1988 on the basis of 1994 Supreme Court opinion); *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (*en banc*) (class won a substantial jury verdict and a motion for judgment n.o.v. was denied, but on appeal the judgment was reversed and the case dismissed, after 11 years of litigation); *AUSA Life Ins. Co. v. Ernst & Young,* 2002 U.S. App. LEXIS 13845 (2d Cir. July 8, 2002) (affirming district court's dismissal after full bench trial and earlier appeal and remand); *Winkler v. NRD Mining, Ltd.,* 198 F.R.D. 355 (E.D.N.Y. 2000) (granting defendants' motion for judgment as matter of law after jury verdict for plaintiffs); *In re Health Mgmt., Inc. Sec. Litig.,* No. 96-CV-889 (ADS) (E.D.N.Y. 1999) (jury verdict for auditor in securities case); *Krinsk v. Fund Asset Mgmt., Inc.,* 715 F. Supp. 472 (S.D.N.Y. 1988), *aff'd,* 875 F.2d 404 (2d Cir. 1989) (verdict for defendants after trial); *Landy v. Amsterdam,* 815 F.2d 925 (3d Cir. 1987) (directed verdict for defendants after five years of litigation; affirmed on appeal); *In re Biogen Sec. Litig.,* No. 94-12177 PBS (D. Mass. 1999) (jury verdict for defendants); *Bentley v. Legent Corp.,* 849 F. Supp. 429 (E.D. Va. 1994) (directed verdict in favor of defendants after plaintiffs' presentation of its case to jury). As the Court stated in *Warner*: "Even a victory at trial is not a guarantee of ultimate success. . . . An appeal could seriously and adversely affect the scope of an ultimate recovery, if not the recovery itself." 618 F. Supp. at 747-748.

### 3. The Quality of Plaintiffs' Counsel's Representation and Substantial Benefit to the Class Supports the Requested Fee

The result achieved and the quality of the services provided are also important factors to be considered in determining the amount of reasonable attorneys' fees. *See, e.g., Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("[M]ost critical factor is the degree of success obtained"); *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 547-48 (S.D. Fla. 1988) ("The quality of work performed in a case that settles before trial is best measured by the benefit obtained.").

In this case, the quality of the representation of Plaintiffs' Counsel is best evidenced by the result. Despite vigorous opposition by Defendants at every stage up to trial, Plaintiffs obtained a Settlement in of $5.5 million in cash from Defendants. Not only did Plaintiffs' Counsel's "skill and expertise contribute to the favorable settlement for the class, it contributed to the overall efficiency of the case." *Denney v. Jenkens & Gilchrist,* 230 F.R.D. 317, 352 (S.D.N.Y. 2005).

Defendants were represented by a well-staffed team of lawyers from the New York office of Gibson, Dunn & Crutcher, LLP, one of the country's largest law firms, who spared no cost or effort in tenaciously challenging Plaintiffs at every stage of the litigation up until the eve of trial. That Plaintiffs' Counsel was able to obtain a substantial settlement from these Defendants confirms the quality of Plaintiffs' Counsel's representation in this matter, and is another important factor for the Court to consider in determining the reasonableness of the fee request. *See, e.g., Taft*, 2007 US Dist. LEXIS at *31 (courts review the recovery and the backgrounds of the lawyers involved in the suit.)

### 4. The Requested Fee Award is Reasonable in Relation to the Settlement Amount

As discussed above, a fee of 30% of the $5.5 million settlement fund is consistent with fees awarded in a similar class action settlements of comparable value. Moreover, it does not create a

14

windfall. *See Wal-Mart*, 396 F.3d at 122; *Taft v. Ackermans*, 2007 U.S. Dist. LEXIS 9144, at *32. *In re Greenwich Pharm. Sec. Litig.*, 1995 WL 2151293, at * 7 (E.D.Pa. April 26, 1995) (fee award of 33% of $4.3 million settlement does not present danger of windfall that would accompany a "megafund" of, for example, $100 million settlement).

### 5.    Public Policy Considerations Fully Support the Requested Fee

The *Goldberger* court noted that "public policy considerations" should be considered in determining the fee awarded to plaintiffs' counsel in class actions. *Goldberger*, 209 F.3d at 50.

Private enforcement of the federal securities laws, such as this case, is a necessary adjunct to government intervention because neither the SEC nor the Justice Department has sufficient assets to address all forms of securities fraud. *See, e.g., Bateman Eichler, Hill Richards, Inc.*, 472 U.S. at 310 (lawsuits brought by investors provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action'") (quoting *J. I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964)). As this Court has stated: It is "imperative that the filing of such contingent lawsuits not be chilled by the imposition of fee awards which fail to adequately compensate counsel for the risks for pursuing such litigation and the benefits which would not otherwise have been achieved but for their persistent and diligent efforts. Private attorneys should be encouraged to take the risks required to represent those who would not otherwise be protected from socially undesirable activities like securities fraud." *Maley*, 186 F. Supp. 2d at 374. *See also Goldberger*, 209 F.3d at 51 (noting the "commendable sentiment in favor of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest").

Moreover, public policy considerations support the award in this case because the Lead Plaintiff and Class Representative, Steelworkers Pension Trust, a large public pension fund,

15

conscientiously supervised the work of lead counsel and has approved the fee request. *See* Hoffmann Decl. at ¶6. Since passage of the PSLRA, courts, including this one, have found that in a PSLRA case, a fee request which has been approved and endorsed by a properly-appointed lead plaintiff is "presumptively reasonable," especially where the lead plaintiff is a sophisticated institutional investor. *EVCI*, 2007 U.S. Dist. LEXIS 57918, at *49-50 (citing *In re Cendant Corp. Litig.*, 264 F.3d 201, 282 (3d Cir. 2001). This accords with Congress' belief that institutions would be in the best position to monitor the ongoing prosecution of the litigation and to assess the reasonableness of counsel's fee request. *In re EVCI*, 2007 U.S. Dist. LEXIS 57918, at *50 n.4.

### D.    A "Cross-Check" Of Plaintiffs' Counsel's Lodestar Demonstrates the Reasonableness of the Requested Percentage Fee

The Second Circuit "encourages" an analysis of counsel's lodestar "as a 'cross-check' on the reasonableness of the requested percentage." *Goldberger*, 209 F.3d at 50; *EVCI*, 2007 U.S. Dist. LEXIS 57918, at *54. Where the lodestar is "used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50.

### 1.    The Number of Hours Expended By Plaintiffs' Counsel Was Reasonable

The starting point for a lodestar analysis is the calculation of the lodestar -- which is "comprised of the amount of hours devoted by counsel multiplied by the normal, non-contingent hourly billing rate of counsel." *In re Prudential Sec. Ltd. Pshps. Litig.*, 985 F. Supp. 410, 414 (S.D.N.Y. 1997); *EVCI*, 2007 U.S. Dist. LEXIS 57918, at *54. Here, Plaintiffs spent 12,185 hours, and their lodestar through October 18, 2007, was $4,594,233.40. *See* Broderick Aff. at Exhibit 1. The requested fee represents only a fractional multiplier of the lodestar.   Plaintiffs' Counsel

performed an enormous amount of work on behalf of the Class, litigating this case to the eve of trial against a formidable opponent.

Berger & Montague bore all the risks and expenses of the litigation, including extensive fact and expert discovery, motion practice, participation in and preparation of submissions for mediations, and preparation for trial. Plaintiffs' Counsel made every effort to be efficient in litigating this action. Berger & Montague is highly experienced in prosecuting securities law claims and shareholder class actions and believes that it was able to perform the various tasks necessary to advance Lead Plaintiffs' and the Class' interests in a more efficient manner compared with counsel with a lesser degree of specialization in this highly-complex field. *See Teachers' Ret. Sys. v. A.C.L.N., Ltd.*, 2004 U.S. Dist. LEXIS 8608, at *20 (S.D.N.Y. May 14, 2004) (noting that the skill and prior experience of counsel in the specialized field of shareholder securities litigation is relevant in determining fair compensation).

## 2.    The Rates Charged By Plaintiffs' Counsel Are Reasonable

The second step in the lodestar cross-check analysis is to evaluate the reasonableness of the current billing rates charged by plaintiffs' counsel. The *Goldberger* court also noted that the overall goal of the fee setting process is to replicate the rate that counsel would be paid in a perfect market. 209 F.3d at 52 ("market rates, where available, are the ideal proxy for their compensation"). The use of current rates to calculate the lodestar figure has been repeatedly endorsed by courts as a means of accounting for the delay in payment inherent in class actions and for inflation. *See, e.g., Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989) ("an appropriate adjustment for delay in payment" by applying "current" rate is appropriate); *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998) (current rates "should be applied in order to compensate for the delay in payment"). In

17

determining the propriety of the hourly rates charged by plaintiffs; counsel in class actions, courts have held that the standard is the rate charged in the community where the services were performed for the type of service performed by counsel. *See Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997) ("[t]he 'lodestar' figure should be 'in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation'") (quoting *Blum*, 465 U.S. at 896 n.11); *accord In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 (S.D.N.Y. 1998). *See also Sutton v. Bernard*, - - F. 3d - -, 2007 WL 2963940 at *4 (7th Cir. Oct. 12, 2007) (in deciding fee award in common fund cases, courts should look to marketplace for legal services as guide to what is reasonable). Viewed in light of that market barometer, Plaintiffs' Counsel's rates are entirely reasonable.

Courts in this district and around the country have repeatedly found rates charged by plaintiffs' counsel in class actions that are comparable to those at issue here to be reasonable given the nature of such work and the risks associated with financing class actions.[7] Thus, a market check and substantial precedent demonstrate that the rates utilized by plaintiffs' counsel in calculating their lodestars are reasonable.

---

[7] *See, e.g., In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689, 2003 U.S. Dist. LEXIS 17090, at *30 (S.D.N.Y. Sept. 26, 2003) (rates of $650/hour for a partner, and $300-$425/hour for associates, are "not extraordinary for a top-flight New York City law firm"); *In re Bankamerica Corp. Secs. Litig.*, 228 F. Supp. 2d 1061, 1065 (E.D. Mo. 2002) ("Similarly, while the hourly rates ranging up to $695 are high for the Eastern District of Missouri, they are nonetheless within the range of reasonableness in the realm of nationwide securities class actions.").

**E.    The Requested Fee Is Reasonable Because It Implies a Fractional Multiplier, Indicating that Plaintiffs Will Not Be Compensated For Much Of Their Time Spent Litigating This Case**

Courts have continually recognized that, in instances where a lodestar analysis is employed to calculate attorneys' fees or used as a "cross check" for a percentage of recovery analysis, counsel may be entitled to a "multiplier" of their lodestar rate to compensate them for the risk assumed by them, the quality of their work and the result achieved for the class. *See, e.g., Goldberger*, 209 F.3d at 54 ("We have historically labeled the risk of success as 'perhaps the foremost' factor to be considered in determining whether to award an enhancement."); *Prudential*, 985 F. Supp. at 414 ("Because counsel who rendered services were not being compensated for their work as it was being performed and because of the significant risk that they might never receive any compensation if the action was unsuccessful, courts have, when warranted, applied a multiplier to the lodestar to arrive at a fair contingent fee.").

Berger & Montague spent over 12,000 hours on this case and their lodestar for the services performed by the firm is approximately $4.6 million. *See* Broderick Aff. at Exhibit 1. As the Court is aware, in contingent litigation, lodestar multiples of over 4 are routinely awarded by courts, including this Court. *See, e.g., Maley*, 186 F. Supp. 2d at 369 (awarding fee equal to 4.65 multiplier, which was "well within the range awarded by courts in this Circuit and courts throughout the country"); *EVCI,* 2007 U.S. Dist. LEXIS 57918, at *56 (2.48 multiplier "is within the range found to be reasonable")(collecting cases and noting that "[l]odestar multipliers of nearly 5 have been deemed 'common' by courts in this District."). Here, Lead Counsel seeks no multiple of their lodestar. In fact, the requested 30% fee represents a fractional multiplier to their lodestar. If the requested 30% fee is granted in its entirety, Plaintiffs will recoup less than 36% of their lodestar.

19

In other words, not only is Plaintiffs' Counsel not receiving a premium on their lodestar to compensate them for the contingent risk factor, their fee request amounts to a deep discount from their lodestar. Thus, the lodestar "cross-check" unquestionably supports a percentage fee award of 30%.

 **F. The Reaction of the Class Demonstrates The Reasonableness of the Fee Request**

 Finally, "[t]he reaction by members of the Class is entitled to great weight by the Court" and confirms the reasonableness of the requested fees. *Maley,* 186 F. Supp. 2d at 374. As stated above, the Notice mailed to members of the Class specifically indicated that Plaintiffs' Counsel would apply for a fee award of 30% of the Gross Settlement Fund, and that any class member could object to the fee application by October 19, 2007. To date, no member of the Class has objected to either the Settlement or to Plaintiffs' Counsel's request for an award of attorneys' fees. This "overwhelmingly positive response" strongly evidences that the fee request is fair and reasonable. *Id.*

**IV. LEAD COUNSEL'S REQUEST FOR REIMBURSEMENT OF EXPENSES IS REASONABLE AND APPROPRIATE**

 It is well established that counsel who create a common fund are entitled to the reimbursement of expenses that they advance to a class. *See, e.g., Teachers' Ret. Sys.*, 2004 U.S. Dist. LEXIS 8608, at *17 (citations omitted). "Courts in the Second Circuit normally grant expense requests in common fund cases as a matter of course." *EVCI*, 2007 U.S. Dist. LEXIS 57918, at *57 (citations omitted); *American Bank Note*, 127 F. Supp. 2d at 433; *Taft,* 2007 U.S. Dist. LEXIS 9144, at *35 (same); *Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they 'were incidental and necessary to the representation' of those

clients"). As detailed in the accompanying affidavit of Plaintiffs' Counsel, (*see* Broderick Aff.) the total unreimbursed out-of-pocket expenses incurred by them to date are $774,329.29. The expenses were incurred on an ongoing basis for such items as consultant and expert fees, photocopying of documents, mediation fees, court filing fees, deposition transcripts, fees for service of subpoenas to witnesses, on-line research, creation of document database, messenger service, postage and next day delivery, long distance and facsimile expenses, transportation, travel and other expenses directly related to the prosecution of this Action, including preparation for trial. *See* Broderick Aff. at Exhibit 2. All of these expenses are customary and necessary expenses for a complex securities action, and were crucial to Plaintiffs' ability to successfully prosecute this case to trial. Moreover, Plaintiffs had no co-counsel or local counsel to perform any of these tasks.

The largest portion of the $774,329.29 in out-of-pocket expenses incurred by Plaintiffs in litigating this case was for accounting and damages experts retained by Plaintiffs, which comprised over $543,000, or over 70% of the total costs. These expenses reflected the fact that this was a complex case which was litigated until a week before trial.

The prosecution of this Action was heavily dependent on expert assistance and testimony. The case involved a $10.2 million restatement of Veeco's financials and allegations of concerning complex accounting, internal financial reporting and disclosure control issues. Plaintiffs alleged that Defendants violated the Securities Exchange Act of 1934 by issuing statements and financial reports for the first, second and third quarters of 2004, because of improper accounting at the Company's TurboDisc division, including alleged improper revenue recognition, and accounting for inventory, and warranty costs. Plaintiffs requested and received over 225,000 pages of documents from Defendants and another 10,000 pages of documents from Defendants' internal auditor, Ernst &

21

Young. During the course of discovery, Plaintiffs retained accounting and damages experts to assist Plaintiffs, including analyzing the documents produced. During expert discovery, the parties exchanged expert reports and took and defended expert depositions. Plaintiffs' damages expert Steven P. Feinstein, Ph.D., CFA opined on damages and loss causation. Plaintiffs' accounting expert Robert W. Berliner, CPA, CFE opined on issues of liability, materiality, and scienter with respect to the alleged fraud involving accounting and internal control issues. The non-testifying expert assisted Plaintiffs in the factual investigation and analysis in connection with the amended complaint and during merits discovery, and also assisted Plaintiffs in preparing their submissions for mediation, including the two-day mediation in October 2006. Expert accounting and damages testimony would have been crucial at trial, and Dr. Feinstein and Mr. Berliner were fully prepared to testify. The expenses for Plaintiffs' accounting and damages experts totaled $543,196.49, as follows:

- Non-testifying forensic accounting expert                          $218,000.00

- Robert W. Berliner, CPA, CRD (testifying accounting expert)        $252,349.49

- Stephen P. Feinstein, , Ph.D., CFA (testifying damages expert)     $ 72,847.00

This Court and others have reimbursed such expert witness fees where "[t]he expenses incurred were essential to the successful prosecution and resolution of [the] Action." *EVCI*, 2007 U.S. Dist. LEXIS 57918, at **57-58; *In re Media Vision Technology Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D.Cal. 1995) (courts award consulting and expert expenses where the testimony is "crucial" and "indispensable" to the litigation at hand.); *In re Immune Response Secs. Litig.*, 497 F. Supp. 2d 1166, 1178 (S.D.Cal. 2007) (reimbursement for experts and consultants was "reasonable" given the "complex factual nature" of case in which experts opined on materiality, loss causation, and damages which was "crucial" and "indispensable" to the litigation); *Uniroyal Goodrich Tire Company v.*

22

*Mutual Trading Corp.,* 63 F.3d 516, 526 (7th Cir. 1995) (court reimbursed counsel for expert expenses where the expert testimony was reasonably necessary for plaintiff to prove its case); *In re Greenwhich Pharm. Secs. Litig.,* 1995 WL 251293, at *7 (E.D.Pa. Aug. 26, 1995)(awarding expert witness fees, which was "a reimbursable expense since expert testimony would have been crucial at trial"); *Hicks,* 2005 WL 2757792, at *10 (awarding expenses incurred by co-lead counsel including expert witness fees and other expenses necessary to the litigation and settlement of the action).

The Notice to the Class advised Class members that Lead Counsel would seek reimbursement of expenses in addition to attorneys' fees, in an amount not to exceed $775,000, exclusive of costs of notice and claims administration. Lead Counsel received no objections to this request, and the requested expenses are well within the amount specified in the notice. Accordingly, Berger & Montague respectfully requests reimbursement for the $774,329.29 of out-of-pocket expenses sought in this petition.

## V.     AN AWARD OF REASONABLE COSTS AND EXPENSES FOR THE STEELWORKERS IS APPROPRIATE

The PSLRA states that "[n]othing in this paragraph shall be construed to limit the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class." 15 U.S.C. § 78u-(a)(4).

The Steelworkers were appointed Lead Plaintiff and, subsequently, Class Representative in this action. As set forth in the Declaration of Richard S. Hoffmann, Steelworkers' General Counsel, the Steelworkers expended over eighty hours valued at a total of $15,964.20, and incurred $125 of out-of-pocket expenses directly relating to the representation of the Class. *See* Hoffmann Decl. at

23

¶11. From the outset of the litigation to settlement, the Steelworkers conscientiously monitored the litigation, and participated in prosecuting the case, including participation in discovery, subjecting itself to deposition, and reviewing significant pleadings and briefs. Hoffmann Decl. at ¶¶6, 11. "Courts in this Circuit routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place." *Hicks,* 2005 WL 2757792, at *10. *In re Worldcom, Inc. ERISA Litig.,* 2004 WL 2338151, at *11 (S.D.N.Y. Oct. 18, 2004) (awarding $5,000 each to the three named plaintiff who had been involved in the litigation including being deposed, and had "performed an important service to the class").

Awards have been made to institutional lead plaintiffs in numerous cases, including in *In re Boston Chicken Sec. Litig.,* C.A. No. 97-WM-1308 (D. Col., Aug. 10, 2006), where the Teachers' Retirement System of Louisiana was awarded $66,000 for reimbursement of costs, consisting of the time spent by its General Counsel and Executive Director. The Birmingham Retirement and Relief Fund was awarded $17,426.75 in costs in *Dusek v. Mattel, Inc.,* CV-99-10864-MRP (C.D. Ca., Sept. 29, 2003), and the State of Connecticut was awarded $13,771.34 in costs in *In re Campbell Soup Co. Sec. Litig.,* C.A. No. 00-152 (JEI) (D.N.J., May 22, 2003).

The Notice to the Class advised Class members that Lead Counsel would seek reimbursement of $16,089 to Steelworkers for their reasonable costs and expenses, including lost wages, directly relating to its representation of the Class. Lead Counsel has received no objections to this request. Accordingly, Plaintiffs' Lead Counsel request that the Court award the Steelworkers the $16,089 as compensation for their reasonable costs, and expenses incurred in representing the Class.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs and their counsel respectfully request that the Court

approve and enter an Order for (i) an award of attorneys' fees in the amount of $1,650,000, or 30%

of the $5,500,000 settlement fund, together with reimbursement of Plaintiffs' Counsel's expenses

in the amount of 774,329.29 and (ii) reimbursement of Lead Plaintiff Steelworkers Pension Trust's

reasonable costs and expenses related to their representation of the Class in the amount of $16,089.


Dated: October 26, 2007                     Respectfully Submitted,


                                            BERGER & MONTAGUE, P.C.

                                            By:    _____
                                                   Sherrie R. Savett
                                                   Carole A. Broderick
                                                   Arthur Stock
                                                   Phyllis M. Parker
                                                   Jeffrey L. Osterwise
                                                   1622 Locust Street
                                                   Philadelphia, PA 19103
                                                   (215) 875-3000

                                            *Lead Counsel for Lead Plaintiff*
                                            *Steelworkers Pension Trust and the Class*


malta431671-03f.wpd

25